## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **DEANNA PIERCE and BILLY ENGLEMANN,** | § § § | |
| *Plaintiffs* | § | |
| **v.** | § § | **CIVIL NO. 1:21-CV-00287-RP** |
| **AVEANNA HEALTHCARE, LLC and AVEANNA HEALTHCARE TEXAS INJURY BENEFIT PLAN,** | § § § § | |
| *Defendants* | § | |

## ORDER

Now before the Court are Defendants' Motion to Compel Mental Examination of Plaintiff Deanna Pierce, filed January 26, 2023 (Dkt. 28); Plaintiffs' Response, filed February 6, 2023 (Dkt. 30); and the parties' Supplemental Briefs, each filed March 17, 2023 by order of the Court (Dkt. 39; Dkt. 40).[1]

## I.   Background

Defendant Aveanna Healthcare, LLC ("Aveanna") is a healthcare company based in Atlanta, Georgia that provides home health care services. Complaint, Dkt. 1 ¶ 7. Plaintiff Deanna Pierce, a resident of  Milam, County, Texas, was employed by Aveanna as a home healthcare nurse. *Id.*

In 2019, Aveanna assigned Pierce to a home in Robinson, Texas to provide in-home nursing care to a minor child. *Id.* ¶ 8. Pierce alleges that on July 22, 2019, she "was working in the subject home when she was violently and sexually assaulted by the patient's father for an extended period of time while performing her nursing duties." *Id. ¶* 9. Pierce alleges that before the sexual assault, she texted her supervisor "with pleas for help" after "the patient's father began making unwanted, aggressive advances toward her." *Id.* She alleges that: "As a direct and

---

[1] By Text Order entered February 7, 2023, the District Court referred the motion and related filings to this Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

proximate result of Aveanna's negligent failure to ensure a safe work environment for Ms. Pierce and negligent failure to timely respond to her pleas for help, Ms. Pierce suffered significant bodily and mental injuries and other damages." *Id.*

Pierce applied for benefits under her Aveanna Healthcare Texas Injury Benefit Plan ("Plan"), a self-funded employee welfare benefit plan. She alleges that the Plan wrongfully denied her application for benefits "on the grounds that the assault did not occur and/or that she does not need any medical and therapeutic treatment, further traumatizing and humiliating Ms. Pierce and exacerbating her injuries and damages." *Id.* ¶ 10.

Pierce and her husband, Billy Englemann ("Plaintiffs"), assert claims for negligence, gross negligence, and malice against Aveanna, and wrongful denial of benefits by the Plan under ERISA, 29 U.S.C. § 1132(a)(1)(B). Plaintiffs seek actual damages for Pierce's mental and physical injuries and Englemann's loss of consortium, exemplary damages, and attorneys' fees and costs under 29 U.S.C. § 1132(g)(1).

Plaintiffs have designated several treating physicians and mental health professionals as non-retained experts who will testify about Pierce's mental injuries allegedly caused by the sexual assault. Dkt. 23 at 3-4. Plaintiffs also have designated Dr. Katy Fowler Sutton, a licensed psychologist who performed a psychological evaluation of Pierce, as a retained expert witness. *Id.* at 6. Dr. Sutton has prepared a written expert report and will testify about the PTSD, anxiety, and depression Pierce alleges she suffers as a result of the alleged sexual assault. *Id.* Pierce also testified at deposition that she suffers from PTSD and haphephobia[2] and has been prescribed medication for those disorders. Pierce Tr. 43:2-24, Dkt. 28-3 at 2.

---

[2] Haphephobia is "[a] morbid dislike or fear of being touched." *Haphephobia*, STEDMANS MEDICAL DICTIONARY (Nov. 2014 Update).

Defendants now move to compel a mental examination of Pierce under Rule 35. The Court held a hearing on the motion on March 7, 2023, during which Plaintiffs argued for the first time that the motion is untimely because Defendants failed to request a mental examination before the designated expert deadline under Rule 26. The Court ordered the parties to submit supplemental briefing on that issue.

## II. Analysis

Defendants ask the Court to order Pierce to submit to a mental examination consisting of a psychiatric interview and a Minnesota Multiphasic Personality Inventory ("MMPI") test performed by Dr. George S. Glass, M.D., P.A. Plaintiffs argue that the Court should deny the motion as untimely. Alternatively, Plaintiffs argue that Defendants have not shown good cause for the exam, and even if they have, the Court should use its discretion to deny the motion because the requested exam may harm Pierce. Finally, Plaintiffs argue that if the Court grants the motion, it should impose several restrictions on the time, place, and manner of the examination.[3]

### A. Timeliness of the Motion

Defendants' motion was filed more than two months after their November 7, 2022 deadline to designate testifying experts under Rule 26(a)(2).[4] Although Rule 35 does not contain a deadline for filing a motion to compel a mental examination, Plaintiffs argue that "Rules 26 and 35 should be read in conjunction with each other when determining the proper timing for a Rule 35 examination and report," and that Rule 35 motions filed after Rule 26(a)(2) deadlines are untimely. Dkt. 39 at 4 (quoting *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 419-20

---

[3] At the hearing, Plaintiffs' counsel argued that Defendants' designation of expert witnesses was untimely because it was filed after the deadline in the Scheduling Order. In addition, Plaintiffs argued that their expert psychologist, Dr. Katy Sutton, had already administered a MMPI test. In their Supplemental Brief, Plaintiffs withdraw these arguments as incorrect. Dkt. 39 at 2.

[4] The Scheduling Order (Dkt. 20) required Defendants to designate their testifying experts by October 3, 2022, but the parties subsequently agreed to extend the deadline to November 7, 2022. Dkt. 39 at 2.

(S.D. Tex. 2012)).[5] Plaintiffs acknowledge that there is a split of authority on this issue and that the Fifth Circuit has not ruled on it. *Id.*[6]

The Court need not decide this issue because even if the Rule 26(a)(2) deadline applies to Defendants' motion to compel, they have presented good cause for delay. A Rule 35 examination that occurs after the expert report deadline may be warranted when there has been a "good cause" showing for the examination. *Diaz*, 279 F.R.D. at 420 n.3. The Court finds that Defendants have shown good cause for the delay because, after the expert designation deadline expired, Pierce disclosed in her deposition new information about her alleged condition, symptoms, and treatment associated with her injuries. *See* Dkt. 40 at 3-4. Plaintiffs also supplemented their production on January 12, 2023 with more than 400 pages of new medical records relating to the scope and severity of Pierce's symptoms. *Id.* at 3-4. Because Defendants present good cause for the delay, the Court does not deny the Motion to Compel as untimely. *See Diaz*, 279 F.R.D. at 421 (stating that supplementation may be proper after the expert designation deadline if the court determines that the facts obtained and any opinions stemming from a Rule 35 examination were "not available at the time of the initial disclosure").

---

[5] *Contra Bush v. Pioneer Hum. Servs.*, No. C:09-0518-RSM, 2010 WL 324432, at *5 (W.D. Wash. Jan. 21, 2010) ("[T]his Court takes the position that the deadline set in the scheduling order for expert reports under Rule 26(a)(2) does not apply to the issuance of a Rule 35 report"); *Waggoner v. Ohio Cent. R.R.*, 242 F.R.D. 413, 414 (S.D. Ohio 2007) (stating that Rule 35 examinations "proceed independently of Rule 26(a)(2)," and the deadline for disclosure of expert reports under Rule 26(a)(2) "does not apply to the issuance of a Rule 35 report"); *see also* 8B RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE ("WRIGHT & MILLER") § 2234 (3d ed. Apr. 2022 Update) ("Except for the discovery cutoff, there is no time limit on when a motion for a physical or mental examination can be made. Long before discovery cutoffs were the norm, it was held not to be an abuse of discretion to refuse to order an examination in connection with a motion for a new trial.").

[6] *See Diaz*, 279 F.R.D. at 416-17 (recognizing split and discussing cases); *see also Quigley v. T-Mobile USA, Inc.*, No. 8:21-CV-1200-JLS-KES, 2022 WL 3013196, at *5 (C.D. Cal. May 26, 2022) (same).

**B. Rule 35(a)**

Under Rule 35(a), a district court "may order" a party to submit to a physical or mental examination by a licensed or certified examiner if (1) the party's "mental or physical condition is in controversy," and (2) the movant has shown "good cause" for the examination. Good cause "requires a showing that the examination could adduce specific facts relevant to the cause of action and necessary to the defendant's case." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). In determining whether "good cause" exists, courts consider factors such as (1) whether the examination will adduce facts necessary to the party's case; (2) the probability of obtaining the information through other sources; and (3) whether the opposing party is planning on proving its claims through expert testimony. *Rivas v. Lowes Home Centers LLC*, No. EP-17-CV-356-KC, 2018 WL 7348033, at *1 (W.D. Tex. July 17, 2018).

One purpose of the rule is to "preserve the equal footing of the parties." *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 392 (S.D. Tex. 2013). "District courts in the Fifth Circuit have construed Rule 35 broadly and liberally in favor of granting discovery and have recognized that good cause for an independent medical examination often exists when the plaintiff has placed his medical condition at issue." *Valenzuela v. Willette*, No. 5:14-CV-00062, 2015 WL 12843209, at *1 (S.D. Tex. May 15, 2015). Even when the "good cause" and "in controversy" requirements of Rule 35(a) are met, however, whether to order a proposed examination is committed to the sound discretion of the court. *Diaz*, 279 F.R.D. at 423.

Plaintiffs' counsel conceded during the oral hearing that Pierce's mental condition is "in controversy," satisfying the first requirement under Rule 35(a). Accordingly, the Court need only determine whether there is good cause for the examination.

In *Schlagenhauf*, the Supreme Court explained that in some cases, the pleadings alone meet the "in controversy" and "good cause" requirements: "A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." 379 U.S. at 119.

Plaintiffs allege that Aveanna was negligent in assigning Pierce to a volatile and unsafe working environment and by failing to take reasonable measures to ensure her safety in the patient's home and timely respond to her pleas for help. Dkt. 1 ¶ 12. Plaintiffs also allege that, as "a direct and proximate result of Aveanna's negligent failure to ensure a safe working environment for Ms. Pierce and negligent failure to timely respond to her pleas for help, Ms. Pierce suffered significant bodily and mental injuries and other damages." *Id.* ¶ 9. Pierce also alleges that her mental injuries were made worse by the Plan's wrongful denial of her claim. She seeks damages for expenses for medical care, counseling, and therapy; physical pain and mental anguish; and loss of earning capacity. *Id.* ¶ 20.

The Court finds that Plaintiffs' pleading provides "good cause" for ordering an examination to determine the existence and extent of the injuries claimed. *Schlagenhauf*, 379 U.S. at 119; *see also Garcia v. Courtois*, No. SA-21-CV-00409-JKP, 2022 WL 464638, at *2 (W.D. Tex. Feb. 15, 2022) (stating that pleadings alone supply good cause for a medical examination of plaintiff's neck and spine); *Ornelas*, 292 F.R.D. at 393 (holding that plaintiff in negligence case who asserted physical injury provided good cause for exam); *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 25 (D. Conn. 1994) ("By claiming ongoing psychiatric harm caused by the negligence of the defendant, therefore, the plaintiff has placed his mental state in controversy, which in turn constitutes good cause for ordering a psychiatric examination under *Schlagenhauf*.").

Plaintiffs acknowledge that under *Schlagenhauf*, their "assertion of a mental injury with supporting experts is enough to establish good cause, ***if*** Defendants are seeking an examination to ascertain the ***existence*** and ***extent*** of Mrs. Pierce's mental injury." Dkt. 30 at 4. But they argue that Dr. Glass is not attempting to determine the existence and extent of Pierce's mental injury because "he very clearly has made up his mind on those points." *Id.* at 5. Plaintiffs point to statements in Dr. Glass' report questioning whether the alleged sexual assault actually occurred and whether Pierce experienced psychological injuries. Thus, Plaintiffs argue, a mental examination is not needed to determine the existence and extent of Pierce's mental injuries.

As stated, one of the purposes of Rule 35 is to preserve the equal footing of the parties. *Ornelas*, 293 F.R.D. at 392. Because Plaintiffs have designated their own witnesses and experts to testify on Pierce's mental injuries, including a written expert report based on a psychological examination, the Court finds good cause for Defendants to perform their own mental examination of Pierce. *See Connell W. Trucking Co. v. Estes Exp. Lines*, No. EP-20-CV-312-KC, 2021 WL 5506738, at *3 (W.D. Tex. Nov. 23, 2021) (finding good cause to examine plaintiff in negligence action to develop defenses where plaintiff retained his own psychological experts); *Shadix-Marasco v. Austin Reg'l Clinic P.A.*, No. A-09-CA-891-LY-AWA, 2011 WL 2011483, at *3 (W.D. Tex. May 20, 2011) (same).

Plaintiffs also argue that Defendants fail to show good cause because Dr. Glass can obtain the information through other means, such as reviewing Pierce's medical records and expert reports.[7] "While the probability of obtaining the information through other sources is pertinent to the 'good cause' inquiry, a plaintiff may not avoid a Rule 35 examination simply on the grounds

---

[7] Plaintiffs also contend that the Plan lacks standing to request a mental examination because review of their ERISA claim for injury benefits is restricted to the Plan Administrator's "administrative record," rendering an exam irrelevant. Dkt. 30 at 3-4. Accepting this argument as valid, it does not address the remaining claims for negligence, gross negligence, and malice Plaintiffs assert against Aveanna. This argument does not negate good cause as to Aveanna.

that other sources of information, such as medical reports and depositions of plaintiff's treating physicians, are available." *Ornelas*, 292 F.R.D. at 391-92. Although Plaintiffs have produced Pierce's medical records and expert reports, the Court finds that Defendants still have a right to have their own expert examine Pierce and analyze her condition. *Shadix-Marasco*, 2011 WL 2011483, at *3. For these reasons, the Court finds that good cause exists for a mental examination of Pierce.

## C.  Court's Discretion

Plaintiffs argue in the alternative that the Court should use its discretion to deny the mental examination even if it finds the requirements of Rule 35 satisfied because Pierce has a "fragile emotional and mental state" and subjecting her to an exam will cause her to suffer great trauma. Dkt. 30 at 6. The Court declines to exercise its discretion to deny the motion. Pierce initiated this action seeking monetary damages for mental injuries caused by Defendants' alleged negligence. "It would not be fair to permit a plaintiff routinely to rely on the very condition of which [s]he complains to defeat a defendant's ability to prove that [s]he did not cause that condition." *Stinchcomb v. United States*, 132 F.R.D. 29, 31 (E.D. Pa. 1990).

## D.  Time, Place, and Manner of the Examination

The Court "retains considerable discretion to establish the manner, conditions and scope of the examination." *Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 363 (D. Colo. 2004); *cf.* Rule 35(a)(2)(B) (stating that the court's order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it"). Plaintiffs ask the Court to put these conditions and limitations on Pierce's mental examination:

> (1) "require Defendants to select a female psychiatrist to perform the examination and assessment";
>
> (2) not allow the expert "to interrogate Mrs. Pierce about aspects of her life which have no bearing on the claims and defenses of this lawsuit, including her childhood, her father's suicide, and her postulated childhood sexual abuse";
>
> (3) order that the exam "take place at a neutral location within a reasonable driving distance of Plaintiffs, or else that she be compensated for her reasonable travel costs";
>
> (4) limit the examination to four hours total, with breaks as needed;
>
> (5) the topics to be covered must be disclosed to Plaintiffs the day before the exam; and
>
> (6) "that either Mrs. Pierce's husband be allowed to attend the examination with her, or else that it be recorded to ensure Defendants' expert sticks to the disclosed topic areas."

Dkt. 30 at 10.

At the hearing, Defendants agreed to requests four through six. For request six, Defendants agreed to allow a female assistant and Pierce's service dog to be present in the exam room, the door to the room will remain open, the exam will be recorded, and Pierce's husband may be present in the building. Accordingly, the Court addresses Plaintiffs' first three requests.

### 1. Proposed Examiner

Defendants ask that Dr. Glass conduct the mental examination, and that its scope include

> inquiry into any mental or psychiatric symptoms or injuries Plaintiff claims are attributable to any act or omission of Aveanna, the July 22, 2019 alleged assault incident, Pierce's social, family and medical history, as well as any behaviors Plaintiff possess[es] that impact or affect her alleged mental or psychiatric injuries and recovery, if any.

Dkt. 28 at 4. Plaintiffs object to Dr. Glass performing the exam because he is a man and "merely wishes to 'confront' her – about his conclusions that the assault never occurred, that she is embellishing her story, and about wide-ranging areas of her life ranging from her father's suicide

to some imagined sexual abuse Dr. Glass seems to have postulated out of thin air." Dkt. 30 at 8. Plaintiffs contend that Dr. Glass' opinions are "antiquated, deconstructive, and cruel." *Id.* In support, Plaintiffs rely on their expert Dr. Sutton's opinion that "Mrs. Pierce may become dangerously destabilized if she is subjected to an in-person psychological evaluation, especially one conducted by an unknown male evaluator." Dkt. 30-4 at 2-3.

In general, "courts will appoint the physician of the moving party's choice unless the opposing party raises a valid objection to the physician." *Shadix-Marasco*, 2011 WL 2011483, at *4. "So long as a plaintiff may select his own doctor to testify as to his physical condition, fundamental fairness dictates that a defendant shall have the same right, in the absence of an agreement by the parties as to who the examining physician will be." 8B Wright & Miller § 2234.2 (quoting *Timpte v. Dist. Ct. ex. Rel. City & Cnty. of Denver*, 421 P.2d 728, 729 (1966)); *see also Garcia*, 2022 WL 464638, at *2 ("Courts in this Circuit have repeatedly found that [Rule 35's purpose of preserving equal footing of the parties] supports the conclusion that a defendant, upon establishing good cause, may select its own expert to conduct the examination."). Courts have sustained objections to a proposed examiner where the examiner had a personal bias in the case, as evidenced by a business or attorney-client relationship with the attorney representing the defendant. *Shadix-Marasco*, 2011 WL 2011483, at *4. But courts have overruled objections to proposed examiners where the plaintiff argued the examiner was biased because "(1) the examiner was abusive and defense oriented; (2) only the examiner had already received information from the defendant regarding the case; (3) the examiner was regularly employed by insurance companies and defendants to perform medical examinations; and (4) the examiner may have received grants or was associated with an institution who may have received grants from a defendant manufacturer." *Id.* (collecting cases).

The Court finds that Plaintiffs' objection to Dr. Glass' gender alone is not a sufficient basis to disqualify him under Rule 35. *See Shadix-Marasco*, 2011 WL 2011483, at *4 (rejecting plaintiff's objection to examiner merely because of his gender). The Court further finds that Defendants' agreements to allow a female assistant and Pierce's service dog to be present in the exam room and that the door to the room will remain open, the exam will be recorded, and Pierce's husband will be permitted to be present in the building sufficiently address Pierce's concerns about having a male psychiatrist examine her.

The Court also finds that Plaintiffs' concerns that Dr. Glass has already made up his mind about Pierce and that his opinions are "antiquated, deconstructive, and cruel" are not grounds for disqualification. Dr. Glass' opinions and methods can be addressed during cross-examination at trial. *See id.* (finding that most of plaintiff's concerns regarding male psychiatrist related to his credibility and could be adequately addressed through cross-examination and impeachment of his testimony during trial); *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 196, 203 (N.D. Tex. 1995), *aff'd*, 164 F.R.D. 204 (N.D. Tex. 1996) (stating that any concerns about bias of examiner could be addressed through cross-examination).

### 2. Topics of Inquiry

Plaintiffs also ask the Court to preclude the examiner from asking any questions about Pierce's childhood, her father's suicide, and any postulated childhood sexual abuse. This request is denied because these topics may be relevant to whether Plaintiffs' injuries were proximately caused by the alleged sexual assault at issue.

### 3. Time and Place of Examination

Finally, Plaintiffs ask that the examination "take place at a neutral location within a reasonable driving distance of Plaintiffs," or else that she be compensated for her reasonable

travel costs. Dkt. 30 at 10. The Court finds that this is a reasonable request. *See* 8B WRIGHT & MILLER § 2234 ("In most cases, a court will require that a mental examination be conducted at a time and place that is not inconvenient to the party to be examined.").

### III. Conclusion

For these reasons, the Court **GRANTS** Defendants' Motion to Compel Mental Examination of Plaintiff Deanna Pierce (Dkt. 28). It is **HEREBY ORDERED** that Plaintiff Deanna Pierce undergo a mental examination consisting of a psychiatric interview and a Minnesota Multiphasic Personality Inventory (MMPI) test performed by Dr. George S. Glass, M.D., P.A., on a mutually agreed date, with the following conditions:

(1) The examination will take place at a neutral location and either within a reasonable driving distance of Pierce, or Defendants will compensate her reasonable travel costs;

(2) The examination will be limited to four hours total, with breaks as needed;

(3) Defendants will disclose to Plaintiffs the topics to be covered the day before the exam; and

(4) A female assistant and Pierce's service dog will be present in the exam room, the door to the room will remain open during the exam, the exam will be recorded, and Pierce's husband may be present in the building during the examination.

**SIGNED** on March 31, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE